Pedro MENENDEZ RODRIGUEZ,
Appellant,

v.

PAN AMERICAN LIFE INSURANCE
COMPANY, Appellee.

Maria Cristina VENTO JAIME,
Appellant,

v.

PAN AMERICAN LIFE INSURANCE
COMPANY, Appellee.
No. 19130.

United States Court of Appeals
Fifth Circuit.

Oct. 17, 1962.

Rehearing Denied Dec. 20, 1962.

Cameron, Circuit Judge, concurred
in the result.

# 430

John P. Corcoran, Jr., and William E. Henson, Jr., Tampa, Fla., for appellants Pedro Menendez Rodriguez and Maria Cristina Vento Jaime.

Morris E. White, William A. Gillen, and Fowler, White, Gillen, Humkey & Trenam, Tampa, Fla., for appellee.

Before CAMERON and BELL, Circuit Judges, and CARSWELL, District Judge.

CARSWELL, District Judge. .

This case is companionable with two others also decided this date: Pedro Menendez v. Aetna Insurance Company, 311 F.2d 437, Tabacalera Severiano Jorge, S. A. v. Standard Cigar Company, 311 F.2d 438.

Their component parts are identical in many respects, and the ultimate determination made here rests upon the same foundation. All three cases were originated by Cuban nationals who have fled from the regime of Fidel Castro and seek redress in the courts of the United States for monies claimed due them under contracts with the respective original defendants. All of the named defendants are corporations organized and existing under the laws of one or another State of the United States. The jurisdictional power of the United States District Court to try these cases is not questioned. There is diversity of citizenship between the parties and all essentials of Title 28 United States Code § 1332, are met in each case. All three of the complaints were dismissed by the District Court on the classic doctrine of *forum non conveniens* in virtually identical orders granting virtually identical motions filed by the respective defendants.

We conclude that the dismissal of each of these complaints on this ground was erroneous. Our review cannot there end but must encompass other grounds asserted in support of the motions to dismiss.

In this particular appeal we have consolidated the separate cases of Pedro Menendez Rodriguez and Maria Cristina Vento Jaime, appellants, against Pan American Life Insurance Company, appellee.

These suits were originally commenced in the Circuit Court of Hillsborough County, Florida, and defendant, a Louisiana corporation, removed this action to the United States District Court on the basis of diversity of citizenship. The plaintiffs sought declaratory decree that they were entitled to receive the cash surrender value of certain insurance policies issued by Pan American Life Insurance Company, appellee.

The complaints allege that on January 5, 1945 Pan American insured the lives of the plaintiffs in the amount of $20,000 each. The policies provided for an annual premium of $1,523.40 to be paid by each of the plaintiffs for twenty years. The policies were accepted by the defendant in New Orleans, Louisiana, and contained, among other provisions, the following: "All the payments relative to this policy be they on the part of the company or the insured will be verified in the City of New Orleans in the legal money

of the United States." Another provision: "This policy is exempt from any restrictions as to residence, travel, or occupation." The policies contained provisions for automatic premium loans in the event of failure to make premium payments, and provisions for the surrender of the policy for its cash value.

The premiums were paid each year from January 5, 1945 through January 1958. The January 5, 1959 premiums were not paid and the automatic loan provisions came into effect. On September 23, 1959 Rodriguez paid to Neal Harrison, an agent for defendant in Tampa, Florida, $2,941.47 to apply against the premium loans which were due on January 5, 1959. Harrison accepted the check, and forwarded it to the defendant in Louisiana. On October 6, 1959 the check was returned by the defendant, and payment refused. In July, 1960 plaintiffs demanded the cash value of the policies in Tampa and were refused. Plaintiffs were advised to make the premium payment in Cuba, and apply for their cash surrender value there. From January 5, 1945 until January 5, 1952 payments had been made in currency of the United States, in accordance with the terms and conditions of the policies. In April, 1951 the Cuban government under Batista decreed that all obligations due citizens of Cuba be paid in Cuban pesos, and all obligations incurred by Cubans were likewise to be paid in Cuban pesos. The policies contain a provision that the contract cannot be changed or modified except with the written consent of the defendant, and signed by the president, vice president, secretary or actuary. Neither the president, vice president, secretary or actuary ever executed written consent to any change or modification of the insuring agreement. Nevertheless, from January 1952 until January 1958 plaintiffs paid, and defendants accepted, payment of premiums in Cuban pesos.

After Pan American caused this action to be removed, it filed its answer and a motion to dismiss. In support of its motion, defendant urged that since the applications of insurance were executed in Cuba, and since the policies were delivered in Cuba, and the premiums paid in Cuba, therefore, all rights which plaintiffs claim are governed by the laws of Cuba. The argument concludes, therefore, that the United States District Court should abstain from exercising its jurisdiction.

In its answer, defendant denied that the subject matter of this suit was within the jurisdiction of the federal court, and claimed that this controversy is justiciable solely under the laws of Cuba and in the courts of Cuba. Defendant claims that the laws of Cuba prohibited it from accepting the premium in Tampa, Florida, in the currency of the United States, and that it was prohibited by Cuban law from paying the cash value of the policies to plaintiffs. In addition, defendant claimed that due to the decree of confiscation plaintiffs were no longer the owners of the policies, and were no longer entitled to receive the cash surrender value of the policies. The decree of confiscation was issued on April 7, 1959 by the government of Cuba, by mere publication of the names of those persons whose property was declared to be confiscated.

The attorney for defendant, by affidavit, averred that demand for payment was made by the Cuban government on defendant on September 20, 1960.

The District Court dismissed plaintiffs' complaints under the doctrine of *forum non conveniens* stating: The plaintiffs are citizens of Cuba, defendant is a United States corporation incorporated in Louisiana, and doing business in Florida; all the transactions took place in Cuba, and are, therefore, governed by Cuban law; the claim did not accrue within the jurisdiction of the court; the docket is crowded, and it would be a burden on the court to litigate the difficult legal questions which arise; for the convenience of the witnesses, and parties, and in the interest of justice; and for other reasons (not mentioned) the action was dismissed on the grounds of *forum non conveniens*.

It is noted that all events and declarations of the Cuban government occurred

after plaintiffs had established residence in Tampa, Florida.

The dismissal of these complaints on the ground of *forum non conveniens* cannot be upheld.

It is perhaps well at the outset to note that we are *not* dealing here with the *transfer* of an action from one federal court to another. The Judicial Code (Title 28 United States Code) in Section 1404(a) has set up standards and procedures whereby one federal court may properly transfer an action to a more convenient federal forum where the action "might have been brought."

We are not here concerned with the delineation given by the courts to Section 1404(a), but we are concerned with the remnants of that statute's historical progenitor, the equitable tradition of *forum non conveniens*. The applicability of the doctrine in our court system has been greatly restricted. As Professor Wright has recently commented,

"The doctrine of forum non conveniens has only a limited continuing vitality in federal courts. Section 1404(a) of the Judicial Code has replaced the doctrine whenever the more convenient tribunal is another federal court where the action 'might have been brought.' Where, however, there is no alternative federal forum, dismissal on the grounds of forum non conveniens is still permissible. In admiralty cases in particular it frequently happens that the more convenient forum is in a foreign country, and dismissal will then be ordered." 1 Barron & Holtzoff, Federal Practice and Procedure § 87, pp. 442–443 (Wright ed. 1960).

■ *Forum non conveniens*, as an equitable proposition, is still available to the federal courts, despite its clear limitation, where the state court or the court

of a foreign country is the alternative forum. See Venue in the Federal Courts —The Problem of the Inconvenient Forum, 15 U.Miami L.Rev. 237, 239 (1961); Glicken v. Bradford, 204 F.Supp. 300, 304 (S.D.N.Y.1962).

■ In the instant case the District Court thus applied the doctrine under the theory that the courts of Cuba were open as an alternative. This we must reject, not upon grounds of abuse of discretion by the court in the employment of a traditionally equitable doctrine, but because we see it as an erroneous application of law to the established facts. There is a clear distinction between the review of transfer orders under 28 U.S.C. § 1404(a), which are interlocutory, and, therefore, reviewable rarely, if at all, and orders of dismissal which being final, are appealable as of right.[1]

■ The facts here are that Pan American removed, as a matter of right under the diversity statute, cause of action from the initial forum chosen by plaintiffs. The plaintiffs have vigorously sought hearing in the jurisdiction invoked by defendants themselves. The burden to establish good cause for dismissal is quite plainly upon the defendant, and it is still true that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L.Ed. 1055 (1947). In this same case the Supreme Court said on pages 506, 507, of 330 U.S., on page 842 of 67 S.Ct.: "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them."

Following this reasoning, Judge Holmes expressed for this Court in 1948

1. See 1 Barron & Holtzoff, Federal Practice and Procedure § 86.7 (Wright ed. 1960). See also Chief Judge Tuttle's discussion of scope of review in Motor Distributors, Ltd. v. Olaf Pedersen's Rederi A/S, 239 F.2d 463, 466 (5th Cir. 1956). It is noteworthy that in North

Branch Products, Inc. v. Fisher, 109 U.S.App.D.C. 182, 284 F.2d 611 (1960), the appellate court reversed the dismissal without even discussing whether any deference need be paid to the trial judge's exercise of discretion.

the view that "At least two such forums must be open to the plaintiff before the doctrine comes into play; and they shall not be dependent merely upon the will or grace of the defendant, but must be provided by law." Tivoli Realty, Inc. v. Interstate Circuit, Inc., et al., 5 Cir., 167 F. 2d 155 at 156, 157.

In 1885 the Supreme Court held that the trial courts have jurisdiction even of a suit between two foreigners "and that they will exercise it unless special circumstances exist to show *that justice would be better subserved by declining it.*" The Belgenland, 114 U.S. 355, 367, 5 S.Ct. 860, 29 L.Ed. 152 (1885). (Emphasis added.) In 1956 Judge Tuttle, speaking for this court reversed a district court which had dismissed in favor of a foreign court, saying: "Instead of the rule being, as the trial court here stated, that jurisdiction should be denied unless such denial would work an injustice, the rule is, rather, that jurisdiction should be taken unless to do so would work an injustice." Motor Distributors, Ltd. v. Olaf Pedersen's Rederi A/S, 239 F.2d 463, 465 (5th Cir. 1956). This year a district court observed that *forum non conveniens* "is a harsh rule and is applied in rather rare cases  *  *  *". Glicken v. Bradford, supra.

█ Defendant, under this test, must show that these plaintiffs, refugees from Castro's Cuba, can obtain justice in the courts of Cuba. The law does not impose upon these Cuban refugees, any more than any other plaintiff, the burden of proving that they would have problems of health or legal difficulties in obtaining justice in the courts of Cuba. By like token, we need not and do not embark upon an international sea of judicial notice of the treatment of those who flee their native land and return to Castro's jurisdiction to contest their property rights with a Louisiana corporation.

A recent case from the Court of Appeals for the District of Columbia is close in point. North Branch Products, Inc. v. Fisher, 109 U.S.App.D.C. 182, 284 F.2d 611 (1960), cert. den. 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705. There the district court had dismissed an action on the ground that either a Michigan state court or a court in Canada would be a more convenient forum. This was reversed, the appellate court finding that the jurisdiction of a defendant would not be obtained in Michigan and said there was no certainty that a Canadian court would assume jurisdiction of the action. The court cited Gulf Oil Corp. v. Gilbert, supra, as authority for the proposition that there must be a clear showing that an alternative forum exists. It was held erroneous to dismiss in the absence of such clear showing.

There is no such showing on the record before us. The District Court's ruling dismissal on grounds that Cuba would be a more convenient forum was error because the standards discussed here were improperly applied to the established facts.

Appellant contends, however, that since it is a Louisiana corporation, the plaintiffs also have available as an alternative forum the courts of that state, and, therefore, the doctrine of *forum non conveniens* was properly invoked by the District Court though the order spoke in terms of more convenience in Cuba. This, it says, is basis enough, under established appellate rules, to sustain the dismissal. Assuming this to be so, arguendo, we still do not find anything suggested by this record that the case would be *more* conveniently tried in the Louisiana courts or anywhere other than the Tampa Division of the United States District Court for the Southern District of Florida. The same burden of clear showing in this record is borne by the defendant, and this it has not carried. Indeed, we think it appropriate to note that should this defendant prevail on this dismissal, there is no assurance that a whole new round of jurisdictional jousting would not be open to invitation. If plaintiffs be required to go now to the Louisiana courts it is not illogical to assume that defendant could there, once again, invoke the doctrine of *forum non conveniens* on the ground that the Florida

courts would be convenient. That is where the plaintiffs started, but still no court would have touched the merits of the claim. Their quest for legal determination of their rights under contract with defendant should be answered.

■ As we observed in the beginning, transfers to other federal courts are quick and ready tools for our trial courts under 28 U.S.C. § 1404(a). But whether it be by transfer order under the statute or by dismissal order under the doctrine of *forum non conveniens* the plaintiffs' privilege to choose, or not be ousted from, his chosen forum is highly esteemed.[2]

A second and even more crucial issue is raised on these motions to dismiss. Although not specifically mentioned in the District Court's findings upon which its dismissal orders were based, running through each record is the contention of appellees that the merits of appellants' respective claims, for one reason or another, are controlled by the law of Cuba. In each case it is urged that the confiscatory and other decrees of the Castro government are binding, that appellants' rights, if any, have been expropriated by Castro; that they have no standing in court as proper parties; that appellees are faced with the prospect of having to pay various officials of Castro's government the monies claimed by the appellees.

All of these contentions and others of similar vein, bring into consideration most sensitive questions of relationship of the government of Cuba, officially recognized by our government, to the United States, and the relationship of the executive branch of our government to the judicial.

Appellees urge that their showing on these points is adequate to support dismissal either as an adjunct of the *forum non conveniens* doctrine or as a separate

and distinct proposition asserted in the name of the Act of State doctrine.

Despite some difficulty in forming a terse definition of the Act of State doctrine it is clear that both it and the doctrine of *forum non conveniens* have their origin in the broader concept of judicial self-restraint.

■ In essence the Act of State doctrine holds that American courts will not look into or pass upon the validity of the acts of foreign governments performed in their capacities as sovereigns within their own territories.[3]

It is not a rule of international law but is instead a rule of the conflict of laws.

The Supreme Court first clearly recognized the doctrine in Underhill v. Hernandez, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897). There it was said on page 252 of 168 U.S., on page 84 of 18 S.Ct.:

"Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves."

The development of the doctrine by the Supreme Court through the years has been reviewed in considerable detail recently by the Court of Appeals, Second Circuit, in a lucid and well reasoned opinion which we conclude should be dispositive of the issues raised by the subject litigation before this court. On July 6, 1962, Judge Waterman spoke for the Second Circuit, in Banco Nacional de Cuba v. Sabbatino et al., 307 F.2d 845 (C.A.2nd Cir.) and there considered various exceptions to the Act of State doctrine. In Banco Nacional de Cuba v. Sabbatino the

2. See 1 Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1960) § 86.3. The defendant's burden is to go to another existing forum and that this is actually so and not merely theoretically.

3. An able discussion of the Act of State doctrine appears in the publication "International Law in National Courts", Proceedings of the Third Summer Conference in International Law, Cornell Law School, June 1960.

court had under review a district court's summary judgment dismissing a complaint filed by the financial agent of the Cuban government against a New York state receiver who was holding proceeds of a shipment of sugar and other defendants as brokers who negotiated its sale in this country.

Fully cognizant of the sensitivity of the Court's role and carefully containing its sweep, the Court affirmed the dismissal of the complaint on summary judgment. We quote rather copiously from this opinion for it states well the basis for our determination that these complaints cannot be dismissed on the Act of State doctrine.

"* * * when the executive branch of our Government announces that it does not oppose inquiry by American courts into the legality of foreign acts, an exception to the judicial abnegation required by the act of state doctrine has arisen and has been recognized both in this circuit and elsewhere. In Bernstein v. N. V. Nederlandsche - Amerikaansche Stoomvaart-Maatschappij, 210 F.2d 375 (2 Cir. 1954) *(per curiam)*, when we received word from the State Department that it was State Department policy to permit American courts to pass on the validity of acts done by Nazi officials, our court rescinded its earlier mandate * * based upon the act of state doctrine, prevented the district court from questioning the validity of the acts of the German Nazi government. (Citing cases [4])

"This exception is applicable to the case before us. While the case has been pending we have been enlightened, as the court was in the Bernstein case, supra, as to the attitude of the Department of State. In a letter, dated October 18, 1961, addressed to counsel for the *amici* in this case, the Legal Adviser to the State Department asserted:

" 'The Department of State has not in the Bahia de Nipe case [Rich v. Naviera Vacuba S. A., 4 Cir., 295 F. 2d 24] or elsewhere, done anything inconsistent with the position taken on the Cuban nationalization by Secretary Herter. *Whether or not these nationalizations will in the future be given effect in the United States is, of course, for the courts to determine.* Since the Sabbatino case and other similar cases are at present before the courts, any comments on this question by the Department of State would be out of place at this time. As you yourself point out, statements by the executive branch are highly susceptible of misconstruction.' (Emphasis added.)

"In a subsequent letter, dated November 14, 1961, the Under Secretary of State for Economic Affairs stated:

" 'I have carefully considered your letter and have discussed it with the Legal Advisor. Our conclusion, in which the Secretary concurs, is that the Department should not comment on matters pending before the courts.'

"On April 13, 1961, the State Department told the litigants in Kane v. National Institute of Agrarian Reform, [No. 61, L. 730] (Fla.Cir.Ct.) (1961) * * *, a case that involved another confiscation by the Castro Cuban government of American-owned property in Cuba: 'Effect in U. S. of Decrees, etc. of Cas-

4. See 173 F.2d 71 (2 Cir. 1949). See also Bernstein v. Van Heyghen Freres, S.A., 163 F.2d 246, 252 (2 Cir.), cert. denied, 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357 (1947); Restatement, Foreign Relations Law of the United States § 44 (Proposed Official Draft, 1962); Kane v. National Institute of Agrarian Reform, No. 61 L. 730, June 8, 1961 (Fla.Cir.Ct.) [18 Fla.Supp. 116]; Association of the Bar of the City of New York, Committee on International Law, Report, A Reconsideration of the Act of State Doctrine in United States Courts 13 (May 1959); Zander, The Act of State Doctrine, 53 Am.J.Int'l L. 826 (1959).

tro regime is question for court in which case heard.' These statements are somewhat ambiguous, perhaps intentionally· so. But at the least they express a belief on the part of those responsible for the conduct of our foreign affairs that the courts here should decide the status here of Cuban decrees. Of course, if there is no good reason for abstention, a court should recognize and accept its fundamental responsibility to decide a case before it in accordance with whatever substantive norms may be relevant; and when, as here, the State Department is willing for the court to adjudicate the rights of the parties, one of the basic reasons for the act of state doctrine—the danger that independent judicial decisions might interfere with this country's foreign relations —is inapplicable to support abstention. The broad statements in cases such as Oetjen v. Central Leather Co., 246 U.S. 297, 38 S.Ct. 309, 62 L.Ed. 726 (1918) and Shapleigh v. Mier, 299 U.S. 468, 57 S.Ct. 261 [81 L.Ed. 355], (1937) could not have been intended by the Supreme Court to require a judicial avoidance of judicial responsibility in a case where the State Department has expressed a lack of concern as to the outcome of the litigation.

"But even though we perceive no danger to American foreign policy from a determination by an American court of the merits of this litigation presently before us, perhaps there is some other ground that compels us to accept without question the validity of the Cuban decree here involved."

The court then proceeded to examine the Cuban decrees involved and its ultimate conclusion was to the effect that they were confiscatory and without standing in our courts.

█ In these cases there are dismissal orders under review while in Banco there was a full review on the merits of sum-

mary judgment. There are also certain rather obvious factual distinctions in Banco and these cases under consideration here. But the legal principles enunciated are fully applicable. In Banco the action was brought by the Castro government's financial agent who sought to invoke Cuban decrees, found confiscatory in nature, to recover from New York defendants. Here we have Cuban nationals as plaintiffs seeking determination of their rights under contract with citizens of this country. The corporate defendants here, in effect, invoke as a bar to this litigation the decrees of Castro which would have the effect of erasing any rights of plaintiffs to monies which might be due them under contracts with American citizens. The point of convergence of these cases is clear: Our courts are not compelled by the Act of State doctrine to give force and effect to the decrees of the Castro government in Cuba. On the merits it was determined in Banco that the subject Cuban decrees were confiscatory and their effect was nullified by the trial court, which was affirmed on appeal.

█ It is for the District Court to determine upon development of all the facts, by summary judgment or otherwise, whether the Cuban decrees are confiscatory or whether the particular decrees are otherwise violative of fundamental concepts of justice and, therefore, without status, in these particular cases.

If such decrees are found wanting by these standards it follows that they will not be given force and effect in our courts. The attempted enforcement of such decrees by the Cuban agent against American citizens was denied in Banco, and it matters not whether the thrust of those decrees be directed against Cuban nationals or American citizens. The American appellee corporation here is certainly no more subject to such decrees than others, and, as in Banco, is fully protected from confiscatory effect within the limit of the power of our courts. The action of the Cuban agent was dismissed in the Banco case, and for

the same reasons we reverse the dismissal of the complaints here.

It is noted that, unlike the Second Circuit in the Banco case, we do not have in the records before us an expression of any kind from the State Department. None has been requested. With the fullest cognizance of the responsibility of the executive branch in the field of foreign relationships, we do not perceive any necessity for formal comment by the State Department about these cases.

Consistently, repeatedly and currently, the State Department has expressed its conclusion that our courts are not restrained from adjudicating the effect of the decrees of the Castro government in Cuba. This has now been made so clear we feel full reliance by the courts upon such expressions may be made without the necessity of a formal enunciation in each and every such case. Indeed, the wisdom of requesting another, and yet another, statement on the identical subject seems quite doubtful. It is specifically noted that there was judicial response to the executive branch's change in approach in Bernstein v. Van Heyghen Freres, S. A., supra.

██ The other grounds asserted in support of these orders of dismissal have been considered and we find none of them, alone or together, sufficient. The crowded condition of the trial docket, the difficulty in determining applicable law in the construction of the contract, for example, are not reason enough to deny adjudication on the merits in view of our treatment here of the two broader issues. Residual issues raised on the present status of the pleadings are properly determinable by the District Court on the merits.

The orders dismissing the complaints are reversed and the causes remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CAMERON, Circuit Judge.
I concur in the result.

On Petition for Rehearing

PER CURIAM.

In reversing the dismissal of this complaint, and remanding for further proceedings, we noted then, and repeat now, that residual issues raised on the present status of the pleadings are properly determinable by the District Court on the merits. We carefully considered and reviewed the argument of appellee that the doctrine of *forum non conveniens* or Act of State doctrine, one or the other, barred further litigation. Our review of that holding in the light of the reiterated contentions of appellee in this petition does not require further hearing.

██ Appellee further suggests here that the Bretton Woods Agreement and certain Cuban currency control statutes require dismissal of this complaint. Since the entry of our opinion in this case this Court has on November 7, 1962 rejected this contention in Pan American Life Insurance Company v. Inocencio Blanco, 311 F.2d 424.

The petition for rehearing is Denied.