# United States Court of Appeals
## For the First Circuit

No. 19-1457

SHINYA IMAMURA; IRYO HOJIN NISHIKAI; IRYO HOJIN SHADAN
IMAMURA CLINIC; KABUSHIKI KAISHA BELLEVUE TRADING;
KABUSHIKI KAISHA MARUHI; KOEKI ZAIDAN HOJIN JINSENKAI;
KONNO GEKA CLINIC; AKIRA KONNO; MASAHIRO YAMAGUCHI;
JUNKO TAKAHASHI, on behalf of themselves and all others
similarly situated,

Plaintiffs, Appellants,

v.

GENERAL ELECTRIC COMPANY,

Defendant, Appellee,

DOES 1-100,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Earl M. Forte, with whom Eckert Seamans Cherin & Mellott,
LLC, Timothy P. Frawley, Law Offices of Timothy P. Frawley,
Faith R. Greenfield, Bonnie L. Dixon and Atsumi & Sakai were on
brief, for appellants.
David J. Weiner, with whom Sally L. Pei, Michael D. Schissel,

Arnold & Porter Kaye Scholer LLP, John B. Koss, and Mintz Levin Cohn Ferris Glovsky & Popeo PC were on brief, for appellee.

————————————

April 24, 2020

————————————

**TORRUELLA**, <u>**Circuit Judge**</u>. In 2011, an earthquake-induced tsunami struck the Fukushima Daiichi Nuclear Power Plant ("FNPP") in Japan.  The event triggered a series of explosions that caused a tragic nuclear disaster, which destroyed the property and livelihoods of the residents of Fukushima Prefecture and the surrounding area (the "FNPP disaster").  The plaintiffs in this case are four individuals[1] and six business entities[2] from Fukushima Prefecture (together "Plaintiffs") who suffered property damage and/or economic harm as a result of the FNPP disaster. Plaintiffs filed a class action lawsuit against General Electric Company ("GE") in the United States District Court for the District of Massachusetts seeking compensatory and punitive damages based on the theory that GE bears at least partial responsibility for the FNPP disaster because it negligently designed the FNPP's nuclear reactors and safety mechanisms, both of which were implicated in the explosions.  The district court dismissed the suit under the doctrine of forum non conveniens based on its determination that an adequate alternative forum was available to Plaintiffs in Japan and that dismissal was in both the private and

---

[1]  Shinya Imamura, Akira Konno, Masahiro Yamaguchi, and Junko Takahashi.

[2]  Iryo Hojin Nishikai, Iryo Hojin Shadan Imamura Clinic, Kabushiki Kaisha Bellevue Trading, Kabushiki Kaisha Maruhi, Koeki Zaidan Hojin Jinsenkai, and Konno Geka Clinic.

public interest. Plaintiffs dispute the district court's conclusion as to the availability of an adequate alternative forum in Japan, where they maintain there is no avenue for recovery specifically against GE. Because the district court did not abuse its discretion in finding that the judicial and administrative compensation schemes that are undisputedly available to Plaintiffs rendered Japan an adequate alternative forum, we affirm.

## I. Background

### A. Facts of the Case[3]

#### 1. The FNPP Disaster

In the late 1960s, the Tokyo Electric Power Company ("TEPCO") commissioned the construction of the FNPP in Fukushima, which is located along the eastern seaboard of Japan. TEPCO is the licensed operator of the FNPP. The FNPP contained six boiling water nuclear reactors, all designed by GE. GE constructed three of the reactors itself (Units 1, 2, and 6) and provided the designs and expertise for the remaining reactors (Units 3, 4, and 5), which were constructed by the Japanese companies Toshiba Corporation and Hitachi Limited. GE also designed the rest of the facilities at the FNPP and "participated regularly in the maintenance of the facility over many years."

---

[3] We note that the facts herein described, while often undisputed by the parties, are allegations, not findings.

On March 11, 2011, a 9.0-magnitude earthquake shook Japan and triggered a 45-foot tsunami.  When the tsunami struck Japan's eastern shoreline, it flooded the FNPP, disabled its generators, and destroyed the emergency cooling pumps.  The resulting lack of power caused the FNPP's cooling systems to malfunction, and as a result, the nuclear reactor cores heated to their melting point and then disabled the valves used to vent the FNPP's radioactive material.  Unable to vent, hydrogen gas accumulated in the FNPP's nuclear reactors.  Despite TEPCO's and the Japanese authorities' efforts to prevent a catastrophe, four days after the tsunami hit the FNPP, the accumulation of hydrogen gas caused Units 1, 3, and 4 to explode, which released toxic radioactive matter into the surrounding environment.  By the time of the first explosion, the Japanese government had evacuated everyone within a twenty-kilometer radius of the power plant.

Fukushima Prefecture suffered unfathomable damage from the nuclear accident.  Many of the residents who were evacuated "lost their homes, their jobs, their land, and their children's schools."  Much of the area surrounding the FNPP (including some areas beyond the evacuation zone) remains uninhabitable today due to radioactive exposure.

The National Diet of Japan (the Japanese legislature) convened an independent commission, the Fukushima Nuclear Accident

Independent Investigation Commission ("the Commission"), to investigate the FNPP disaster and to prepare a report about its findings. After 900 hours of hearings and 1,167 interviews, the Commission concluded that the accident "was a disaster 'Made in Japan'" and catalogued "a multitude of errors and willful negligence . . . by TEPCO, regulators[,] and the [Japanese] government." The Commission also concluded that TEPCO had overlooked new scientific information regarding tsunami risks, failed to implement severe-accident countermeasures consistent with international standards, and generally had inadequate emergency procedures and training.

## 2. Japan's Compensation Scheme

In 1961, Japan enacted the Act on Compensation for Nuclear Damage ("Compensation Act"), which governs the country's liability and compensation schemes for nuclear disasters. In the event of a disaster, the Compensation Act channels all liability for the resulting damages to the operator of the nuclear power plant; therefore, in Japan, TEPCO is the only entity liable for damages arising from the FNPP disaster. Furthermore, because the Compensation Act imposes strict liability on TEPCO, claimants need only prove causation and damages to obtain compensation. Additionally, the Compensation Act fixes a ten-year statute of limitations (set to expire in 2021) and provides no cap on damages

-6-

against the plant operator.

Victims of the FNPP disaster may pursue compensation through three channels, which are not mutually exclusive: (1) file a lawsuit against TEPCO in the courts of Japan; (2) submit a direct claim to TEPCO; and/or (3) mediate a claim against TEPCO through the Nuclear Damages Dispute Resolution Center ("ADR Center"). As provided in the Compensation Act, in the wake of the FNPP disaster, the Japanese government established the Dispute Reconciliation Committee for Nuclear Damage Compensation (the "Committee") within the Ministry of Education, Culture, Sports, Science, and Technology. The founding directive of the Committee is to mediate compensation disputes arising from the FNPP disaster and to issue guidelines for assessing claims. The ADR Center is a public mediation service (subordinate to the Committee) overseen by a three-member committee comprised of two independent lawyers and a law professor. It is "tasked with mediating the settlement of claims for compensation brought against TEPCO by those affected by the accident at [the FNPP]."

As of March 30, 2018, victims had filed 440 lawsuits against TEPCO, fifty of which ended with court judgments and 110 of which ended with settlements. Victims may sue in the first instance or after receiving an unsatisfactory settlement offer through one of the other two mechanisms. Lawsuits carry a filing

fee of no larger than one percent of a case's value. Although Japan has no class action mechanism for claims arising from a nuclear disaster, multiple plaintiffs may join together in a single lawsuit. In fact, several large groups of evacuees have banded together (either by choice or court-ordered consolidation) to sue TEPCO (often adding Japan as a co-defendant) and have successfully recovered sums totaling up to ¥1 billion.

By the time of the litigation below, over two million victims had filed damages claims directly with TEPCO. TEPCO reviews these claims and calculates compensation awards based on standardized formulas from uniform guidelines, which it devised in accordance with the Committee's Interim Guidelines. Claimants may recover for the loss of property, including the temporary loss of property (in which case compensation is pro-rated for the duration of the evacuation), as well as additional costs, such as the costs of radiation testing. Businesses may also recover for reputational harm and loss of sales.

As of February 1, 2019, claimants had submitted 24,426 claims to the ADR Center for mediation, 23,363 of which had been fully resolved. Of the resolved cases, 18,890 had reached a settlement agreement. There is no filing fee for submitting a claim to the ADR Center, where claimants can proceed pro se or with an attorney. Settlement procedures at the ADR Center are

generally conducted in accordance with the Committee's Interim Guidelines, which provide compensation for lost real estate value and damages associated with the interruption of business activities (e.g., reduced sales revenues, reputational harm). Publicly available information about the value of settled claims is sparse due to confidentiality provisions, but the range of settlements varies widely.

In total, as of February 15, 2019, TEPCO had paid out approximately ¥8.721 trillion to individuals and businesses for damages wrought by the FNPP disaster. To ensure the compensation of the victims, the Japanese government has provided TEPCO with critical financial support. The Compensation Act required TEPCO to enter into both a liability contract with an insurance company and an indemnity agreement with the Japanese government. Together, these agreements insured TEPCO up to ¥120 billion. However, the Compensation Act requires the Japanese government to provide operators of nuclear power plants as much aid as is required to compensate for damages in excess of that amount where necessary to realize the statute's purpose. After the accident, the Japanese government provided an initial ¥188.9 billion to TEPCO pursuant to the indemnity agreement. Additionally, after approving TEPCO's official request for support, Japan enacted the Act on Nuclear Damage Compensation and Decommissioning Facilitation

Corporation (the "NDF Act"), which established an eponymous regulatory body to oversee a fund backed by government bonds to further subsidize the compensation process. By April 2018, TEPCO had received over ¥8 trillion from the fund, which has a maximum bond limit of ¥13.5 trillion.

**B. Procedural History**

On November 17, 2017, Plaintiffs filed a class action lawsuit in the District of Massachusetts against GE predicated on several theories of negligence. After GE moved to dismiss the complaint, Plaintiffs filed an amended complaint on May 21, 2018. Plaintiffs sued on behalf of two putative classes: (1) a citizen class that includes homeowners in and around the evacuation zone who suffered economic injury; and (2) a business class that includes all businesses, corporate entities, and sole proprietorships (non-profit and for-profit alike) in and around the evacuation zone who suffered injury as a result of the FNPP disaster. Plaintiffs estimate that, together, these putative classes include as many as 150,000 citizens and hundreds of businesses.

Plaintiffs brought seven claims against GE, its subsidiaries, agents, and employees. They alleged negligence (Count I), strict product liability for manufacturing and design defects (Counts II and III), and damage to real property (Count

IV) under Massachusetts law. They also alleged negligence (Count V), failure to warn (Count VI), and diminution of value to real property and business interests (Count VII) under Japanese law. Plaintiffs sought both compensatory and punitive damages.

Additionally, as an initial matter, Plaintiffs alleged that venue was proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 because GE maintains its corporate headquarters and principal place of business in Boston, Massachusetts. Plaintiffs also contended that subject matter jurisdiction was proper because the Convention on Supplementary Compensation for Nuclear Damage, opened for signature Sept. 27, 1997, S. Treaty Doc. No. 107-21 (2002) (the "CSC"), to which both Japan and the United States are parties, did not apply retroactively to vest Japanese courts with exclusive jurisdiction over claims arising from the FNPP disaster.

As to the particulars of their claims, Plaintiffs averred that GE's negligent design of the FNPP, its nuclear reactors, and its emergency safety mechanisms "contributed mightily to the disaster and to Plaintiffs' damages." Plaintiffs first denounced GE's use of an "utterly defective" design for five of the FNPP's six boiling water reactors. Relatedly, they alleged that GE misrepresented the safety of the reactors for economic gain. Next, Plaintiffs traced the Plant's nuclear meltdown back

to a series of allegedly flawed decisions made by GE in the overall design of the Plant (and subsequent failure to remediate the flaws) such as: lowering the "natural protective cliff" at the Plant site by over sixty feet to save costs; placing the emergency generators and seawater pumps in the basements of seaside buildings without flooding protections; neglecting to provide a backup power source in case the emergency generators failed; and not including enough space in the reactor buildings to "to accommodate sufficient emergency equipment."  Plaintiffs insisted that these structural choices were particularly short-sighted given the region's well-documented, tumultuous history of tsunamis.  Finally, Plaintiffs claimed that GE contributed to the magnitude of the harm by failing to warn TEPCO or local residents of the operational risks associated with the threats of earthquakes and tsunamis.

On July 19, 2018, GE moved to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as well as the doctrine of forum non conveniens.  As to Rule 12(b)(1), GE argued that the CSC stripped the district court of subject matter jurisdiction.  As to Rule 12(b)(6), GE contended that Plaintiffs had failed to state a claim because Japanese law applied, and the Compensation Act barred Plaintiffs' claims against GE by channeling all liability to TEPCO.  GE also posited that Plaintiffs' claims were nevertheless barred by the

Massachusetts statutes of limitations and repose.  Finally, GE submitted that the doctrine of forum non conveniens "required dismissal in favor of a Japanese forum."

On April 8, 2019, the district court allowed GE's motion to dismiss for forum non conveniens.[4]  See Imamura v. General Elec. Co., 371 F. Supp. 3d 1, 3 (D. Mass. 2019).  Analyzing the motion to dismiss under the abiding two-pronged framework, the district court assessed whether GE had met its burden (as the moving party) of "showing both that an adequate alternative forum exists [in Japan] and that considerations of convenience and judicial efficiency strongly favor litigating the claim [there]."  Id. at 7 (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)).  After careful consideration, the district court concluded that dismissal was appropriate because GE had met its burden.

---

[4]  The district court assumed arguendo that it had jurisdiction to hear the case despite the CSC's exclusive jurisdiction provision. See Imamura v. General Elec. Co., 371 F. Supp. 3d 1, 6-7 (D. Mass. 2019) ("If 'a foreign tribunal is plainly the more suitable arbiter of the merits of the case,' a court may dismiss for forum non conveniens without resolving whether it has subject matter jurisdiction." (quoting Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 425 (2007))); see also Cooper v. Tokyo Elec. Power Co., 860 F.3d 1193, 1205 (9th Cir. 2017) (holding that the CSC did not strip district court of jurisdiction over claims arising from the FNPP disaster).  Because we agree with the district court's forum non conveniens ruling, we leave the issue of the CSC's exclusive jurisdiction provision for another day.

At the first step, the court held that GE had established that an adequate alternative forum was available in Japan by "demonstrating that many plaintiffs have successfully received satisfactory compensation through lawsuits against TEPCO in Japanese courts and claims directly with TEPCO and through the ADR Center." Id. at 9. Retracing the defining features of the Japanese compensation scheme, the court was persuaded that the remedies it provided were not "so clearly inadequate or unsatisfactory" as to constitute "no remedy at all." Id. at 7 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981)). Because the court found that the existing avenues in Japan for seeking compensation for damages caused by the FNPP disaster were adequate, it rejected Appellant's contention that Japan is not an available forum because it does not provide a means to "secure a remedy [specifically] from GE." Id. at 8. The district court also rebuffed Plaintiffs' attempts to cast aspersions on the adequacy of Japan's existing compensation scheme by finding that: (1) the lack of a class action mechanism and the imposition of a minimal filing fee did not render the Japanese judicial system deficient; (2) the mediation of claims through the ADR Center was not too complex for class members to navigate or subject to undue influence by TEPCO; and (3) the guidelines governing the direct claims and mediation processes did not exclude any members of the

putative class.  Id. at 9-11.

Having determined that Japan constituted an adequate alternative forum, the district court proceeded to the second prong, at which it weighed the relevant private and public interest factors.[5]  First, the district court held that, on balance, the relevant private interest factors counseled in favor of dismissal "because of the difficulty of accessing relevant evidence for use in this Court and the Court's inability to compel production of important Japanese documents and testimony from Japanese witnesses and to implead potentially liable third parties."  Id. at 11. Next, the court determined that the public interest factors also favored dismissal because "Japan's interest in this lawsuit far outweighs the local interest, the case involves complex choice of law and foreign law questions, and adjudication of this lawsuit would significantly burden the Court."  Id. at 13.

On May 1, 2019, Plaintiffs filed a timely notice of appeal, in which they exclusively challenge the dismissal of their

---

[5]  As a threshold matter, the district court stated that, because Plaintiffs are citizens and businesses of Japan with no U.S. connections who appear to be motivated at least in part by forum shopping (i.e., to evade the channeling provisions of the Compensation Act), it would entitle "Plaintiffs' choice to file their lawsuit in Massachusetts . . . to some, but not great, deference."  Imamura, 371 F. Supp. 3d at 11; cf. Cooper, 860 F.3d at 1211 (entitling U.S. citizens and servicemembers to a greater degree of deference in lawsuit arising from Fukushima disaster filed in the Southern District of California).

amended complaint on forum non conveniens grounds as to the district court's determination on the first prong.

## II. Discussion

We review forum non conveniens determinations for abuse of discretion. See Interface Partners Int'l Ltd. v. Hananel, 575 F.3d 97, 101 (1st Cir. 2009); see also Piper, 454 U.S. at 257. "We will find an abuse of discretion if the district court (1) failed to consider a material factor; (2) substantially relied on an improper factor; or (3) assessed the proper factors, but clearly erred in weighing them." Id. (quoting Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007)). In our review, we take great care not to "substitute [our] judgment for that of the district court []or strike the balance of relevant factors anew." Id. (quoting Iragorri, 203 F.3d at 12). Of course, any error of law committed by the court within its forum non conveniens determination will be reviewed de novo. Id. (citing Adelson, 510 F.3d at 52). "[A] material error of law invariably constitutes an abuse of discretion." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013).

"When a defendant moves for dismissal on forum non conveniens grounds, it bears the burden of showing both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the

claim in the alternative forum." Iragorri, 203 F.3d at 12 (citing Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 423-24 (1st Cir. 1991) (Mercier I)). At the first step, an adequate alternative forum exists when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." Mercier I, 935 F.2d at 424 (citation and internal quotation marks omitted). A defendant generally meets its burden as to the first requirement (the forum's "availability") if it establishes "that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there." Iragorri, 203 F.3d at 12 (citing Piper, 454 U.S. at 254 n.22). As for the second requirement (the forum's "adequacy"), an alternative forum is only inadequate if the remedy that it provides "is so clearly inadequate or unsatisfactory that it is no remedy at all." Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1350 (1st Cir. 1992) (Mercier II) (quoting Piper, 454 U.S. at 254). By way of example, courts have indicated that a forum effectively provides no remedy at all "if it 'does not permit litigation of the subject matter of the dispute,'" id. (quoting Piper, 454 U.S. at 254 n.22), or if "the plaintiff demonstrates significant legal or political obstacles to conducting the

-17-

litigation in the alternative forum," id. (citing Menéndez Rodríguez v. Pan Am Life Ins. Co., 311 F.2d 429 (5th Cir. 1962)).

At the second (and more complicated) step, the district court performs a balancing test to determine whether the defendant has demonstrated that "the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." Iragorri, 203 F.3d at 12 (citing Gulf Oil Corp. v. Gilbert, 330 U.S 501, 508-09 (1947)). Relevant private interest factors include:

> the relative ease of access to sources of proof; availability [and cost] of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious[,] and inexpensive.

Gilbert, 330 U.S. at 508. On the other side of the scales, relevant public interest factors include:

> the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper, 454 U.S. at 241 n.6 (quoting Gilbert, 330 U.S. at 509).

These factors constitute a "helpful starting point," Iragorri, 203 F.3d at 12, but because the facts of each case are

-18-

unique, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice," Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 527 (1947).

Here, Plaintiffs exclusively dispute the availability of an adequate alternative forum in Japan. They do not challenge the district court's balancing of factors at the second step of the analysis. Instead, they merely assert that because Japan is not an adequate alternative forum, "the district court incorrectly proceeded [to the second step] to weigh the private and public interest factors." Accordingly, we find that they have waived any argument that the district court abused its discretion as to its balancing of the relevant private and public interest factors. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). We therefore limit our review to the first step of the forum non conveniens analysis: the availability of an adequate alternative forum.

## A.   The Availability of an Adequate Alternative Forum

### 1.

Plaintiffs' sole argument as to adequacy on appeal is that because the Compensation Act channels all liability for damages claims relating to the FNPP disaster to TEPCO, "there is no forum in Japan, judicial or otherwise" which permits them "to pursue [their] claims against GE." Plaintiffs contend that the

district court's determination that Japan is an available forum amounts to a "misapplication" of the doctrine, which "denies [them] any forum for their claims against GE," strips them of their "inherent right" to seek recovery from the party of their choosing, and effectively extends to GE blanket immunity for its role in the FNPP disaster. Relatedly, Plaintiffs submit that the district court improperly relied on the "administrative compensation scheme cases" in ruling that the existence of claims processes directly with TEPCO and through mediation at the ADR Center also rendered Japan an available and adequate forum. For the following reasons, we disagree.

As we have explained, courts "generally deem" the alternative foreign forum available if the forum is able to exercise both personal jurisdiction over the defendant as well as subject matter jurisdiction over the dispute. Iragorri, 203 F.3d at 12. "Ordinarily," we deem the personal jurisdiction requirement to be "satisfied when the defendant is 'amenable to process' in the [alternative forum]." Piper, 454 U.S. at 254 n.22 (quoting Gilbert, 330 U.S. at 506-07). The alternative forum exercises subject matter jurisdiction if it "addresses the types of claims that the plaintiff has brought." Iragorri, 203 F.3d at 12 (citing Piper, 454 U.S. at 254 n.22). GE maintains that it is amenable to service of process in Japan, a contention it supports primarily

-20-

through its submission of a declaration of a Japanese law expert to that effect. A defendant's "concession" as to amenability to service of process in the alternative forum is generally sufficient to satisfy the first requirement. Gschwind v. Cessna Aircraft Co., 161 F.3d 602, 606 (10th Cir. 1998) (citing Piper, 454 U.S. at 254 n.22). While GE may technically be amenable to suit in Japan (as far as we know, Plaintiffs have not tested GE on its word by attempting service), Plaintiffs decry GE's pledge as no more than "an empty promise." This is the core of Plaintiffs' argument, and it highlights what makes this a somewhat atypical forum non conveniens case. Under other circumstances, GE's concession that it is amenable to service of process in Japan would likely end the inquiry, as the Japanese judicial system provides valid causes of action under tort law that, in theory, would allow Plaintiffs to recover for the types of injuries and causes of action they alleged in their amended complaint. However, the Compensation Act and the FNPP disaster change the dynamics.

Relying on the Supreme Court's decision in Gilbert as well as First Circuit precedent, such as Mercier I and Iragorri, Plaintiffs contend that even if GE is amendable to service of process in Japan (which they dispute on appeal), the Compensation Act divests Japanese courts of subject matter jurisdiction over any FNPP disaster-related damages claims against GE by channeling

-21-

all liability to TEPCO. Hence, Plaintiffs proclaim that "GE is immune from suit in Japan" and thus not meaningfully amenable to process there. See Associação Brasileira de Medicina de Grupo v. Stryker Corp., 891 F.3d 615, 620 (6th Cir. 2018) ("[A] foreign forum is not truly 'available' -- and a defendant is not meaningfully 'amenable to process' there -- if the foreign court cannot exercise jurisdiction over both parties."). Accordingly, for the purposes of forum availability, Plaintiffs contend that a foreign forum cannot fairly be said to address the types of claims that they have brought in the District of Massachusetts against GE if said forum does not permit Plaintiffs to bring these types of claims against their choice of defendant.

**2.**

Despite Plaintiffs' fear that GE's promise of amenability to service of process is an empty one, we are nonetheless "secure in the knowledge" that Plaintiffs' claims will not "languish in some jurisdictional limbo." Snöfrost AB v. Håkansson, 353 F. Supp. 3d 99, 106 (D. Mass. 2018). This is because we agree with the district court that, while Plaintiffs may not be able to obtain recovery in Japan specifically from GE, Japan nevertheless adequately addresses the same types of claims through a carefully designed tripartite compensation scheme. See Imamura, 371 F. Supp. 3d at 8. As to the judicial component of

-22-

that scheme, the district court determined that the fact that Plaintiffs could sue TEPCO -- who by statute is strictly liable for all damages proximately caused by the FNPP disaster "until the ten-year statute of limitations expires in 2021" -- indicated that Japan provided a sufficiently adequate remedy so as to render it an available forum. Id. at 9. We see no abuse of discretion in this determination, especially because many members of the putative class have already obtained compensation by way of judgments against TEPCO in Japanese courts, and Plaintiffs offered no basis for the district court to conclude that such compensation is so "unsatisfactory that it is no remedy at all," Mercier II, 981 F.2d at 1350 (quoting Piper, 454 U.S. at 254).[6]

---

[6] Relatedly, Plaintiffs' reference to Martínez v. Dow Chemical Co., 219 F. Supp. 2d 719 (E.D. La. 2002), for the proposition that a proposed alternative forum may not be considered available "if the laws of the country where [it] is located bar the plaintiff from proceeding there," is misplaced. In Martínez, a non-binding district court decision, banana farm workers from Costa Rica, Honduras, and the Philippines sued defendant Dow Chemical Company, the manufacturer of a chemical widely used on banana farms that the workers alleged had rendered them sterile. 219 F. Supp. 2d at 721-22. The district court denied the defendant's motion for dismissal for forum non conveniens primarily on forum availability grounds because Costa Rica and the Philippines had enacted laws divesting their courts of jurisdiction over claims first filed elsewhere, and Honduras had a similar preemptive jurisdictional rule favoring a plaintiff's first choice of forum. Id. at 725-32, 735-40. Martínez is plainly distinguishable because no such preemptive jurisdictional bar exists in Japan. The Compensation Act may preclude Plaintiffs from replicating the exact same lawsuit where GE (instead of TEPCO) is the named defendant, but the district court was presented with ample factual information indicating that the doors of Japanese courts remain open to

-23-

Plaintiffs protest that the district court's decision is at odds with the Supreme Court's statement in <u>Gilbert</u> that forum non conveniens "presupposes at least two forums in which the defendant is amenable to process." 330 U.S. at 507. However, we see no such untenable conflict. First, we do not read <u>Gilbert</u> to hold that dismissal for forum non conveniens is improper when the alternative forum offers adequate remedies for the exact same injuries alleged by the plaintiff in U.S. court but channels liability for those injuries to a third party who is not the same defendant in the U.S. case. Rather, as <u>Gilbert</u> makes clear, it is the "absence of jurisdiction" that raises red flags. 330 U.S. at 504. So long as Japanese courts continue to allow Plaintiffs their day in court, where they may obtain full and fair compensation -- regardless of which entity ultimately foots the bill -- there is no meaningful absence of jurisdiction. Thus, we cannot say that the district court abused its discretion. Conceptually, this is comparable to when a plaintiff secures a judgment against two tortfeasors under a theory of joint and

---

Plaintiffs, so that they may bring their damages claims against TEPCO until the statute of limitations expires in 2021. This is also consistent with our holding in <u>Ahmed</u> v. <u>Boeing Co.</u>, 720 F.2d 224, 226-27 (1st Cir. 1983), that the district court did not abuse its discretion in finding that Pakistan and Saudi Arabia constituted adequate available forums despite the "possibility" that plaintiffs' acceptance of the defendant's "diah," or blood money payments, might bar their future claims in those forums.

several liability and then fully recovers her damages from one of the tortfeasors.  We do not say the plaintiff is left with an imperfect remedy simply because she recovers one hundred percent of her damages from one tortfeasor and none from the other.

Second, even if Plaintiffs are allowed to litigate their claims against GE in Massachusetts, local choice of law rules likely dictate that Japanese law would apply.  See Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994) ("Traditionally, in matters of tort, the courts of [Massachusetts] apply the substantive laws of the jurisdiction wherein the tort occurred.").  The district court recognized as much in its balancing of the public interest factors.  See Imamura, 371 F. Supp. 3d at 14.  From this we draw the reasonable inference that the Compensation Act may inevitably require the dismissal of the case from Plaintiffs' chosen forum even if allowed to proceed to the next phase of litigation.[7]  See Ahmed, 720 F.2d at 226 (finding defendant's blood money payments to Pakistani plaintiffs were

---

[7] Plaintiffs, for their part, dispute the extraterritorial applicability of the Compensation Act in U.S. courts by way of submissions from Japanese law experts.  The district court did not factor this contention into its memorandum and order, although we could hardly conclude that eschewing this argument constituted an abuse of discretion in the context of the court's broader findings as to Japan's strong interest in having these claims adjudicated through its existing compensation scheme, as suggested by the enactment Compensation Act and Japan's eventual ratification of the CSC.

"likely irrelevant to the choice of forums" -- between Pakistan and Saudi Arabia on the one hand and Massachusetts on the other -- because there was a "strong reason to believe that a district court sitting in Massachusetts would have to apply foreign law," just like the alternative forums, to determine if those payments precluded further recovery); cf. Cooper v. Tokyo Elec. Power Co., Inc., 166 F. Supp. 3d 1103, 1131-1136 (S.D. Cal. 2015) (denying motion to dismiss for forum non conveniens where TEPCO was the defendant in U.S. plaintiffs' suit to recover for injuries proximately caused by the FNPP disaster).

**3.**

Finally, Plaintiffs do not persuade us that the district court abused its discretion by factoring the availability of an administrative compensation scheme into its forum non conveniens determination. To determine that the claims processes (either directly with TEPCO or through mediation at the ADR Center) satisfied the availability and adequacy thresholds, the district court looked to several cases from our sister circuits, which it dubbed "the administrative compensation cases." Imamura, 371 F. Supp. 3d at 8-9; see Veljkovic v. Carlson Hotels, Inc., 857 F.3d 754, 756 (7th Cir. 2017) (holding Serbian Restitution Agency an adequate alternative forum for property disputes despite being a "nonjudicial mode[] of dispute resolution"); Tang v. Synutra

_Int'l, Inc._, 656 F.3d 242, 250-51 (4th Cir. 2011) (finding compensation fund created by manufacturers of contaminated infant formula rendered China an adequate alternative forum for products liability dispute because "the forum non conveniens doctrine does not limit adequate alternative remedies to _judicial_ ones"); _Lueck_ v. _Sundstrand Corp._, 236 F.3d 1137, 1144-45 (9th Cir. 2001) (concluding that New Zealand's Accident Rehabilitation and Compensation Insurance Corporation, an administrative body created by statute, was an adequate alternative forum for plaintiffs' damages claims stemming from a plane crash even in the absence of an available remedy in New Zealand courts). _But see_ _Nat'l Hockey League Players' Ass'n_ v. _Plymouth Whalers Hockey Club_, 166 F. Supp. 2d 1155, 1164 (E.D. Mich. 2001) ("_Piper_ does not appear to consider an administrative remedy adequate."). Relying on the Ninth Circuit's reasoning in _Lueck_ in particular, the district court here held that "[a] remedy available through an administrative compensation scheme can render a foreign country an adequate alternative forum," regardless of "whether the plaintiffs could 'maintain [the] exact suit' in the foreign forum." _Imamura_, 371 F. Supp. 3d at 8 (alteration in original) (quoting _Lueck_, 236 F.3d at 1144-45).

We have little difficulty concluding that the district court did not abuse its discretion in finding that _Lueck_'s analysis

is both "instructive" as applied to the facts of the case at hand and that it "dovetails with Piper's emphasis on the existence of any adequate remedy for plaintiff's injury." Id. (emphasis added). In the way of background, Lueck implicated damages claims by New Zealand citizens relating to an airplane crash that occurred in New Zealand. 236 F.3d at 1140-41. The surviving passengers and crew, as well as the estates of the passengers killed in the accident, asserted various products liability claims in the United States against the Canadian manufacturer of the plane and the American manufacturer of the plane's warning systems. Id. On appeal from the dismissal of their complaint for forum non conveniens, the Lueck plaintiffs disputed New Zealand's availability and adequacy as a forum on the ground that it "offers no remedy at all for their losses because it has legislated tort law out of existence." Id. at 1143 (internal quotation marks omitted). The plaintiffs were referring to New Zealand's Accident Compensation Act ("ACA"), which much like Japan's Compensation Act, "provide[d] coverage, on a no-fault basis, for those who suffer[ed] personal injury arising from accidents." Id. at 1141. Logistically (and again much like Japan's Compensation Act), the ACA barred civil claims for compensatory damages and established the Accident Rehabilitation and Compensation Insurance Corporation ("ACC"), an administrative body tasked with paying out benefits

for the expenses covered by the ACA.  Id.  Nearly all of the Lueck plaintiffs had filed claims with the ACC and received compensation; moreover, they sued the airline in New Zealand court, but their claims for compensatory damages were "dismissed . . . as statutorily barred by New Zealand's accident compensation scheme," although their claims for exemplary damages (which were not barred by the ACA) were allowed to proceed.  Id. at 1142 (citing McGrory v. Ansett N.Z. Ltd., 2 N.Z.L.R. 328 (1998)).

In rejecting the Lueck plaintiffs' argument that the ACA's bar on civil damages claims undermined New Zealand's availability and adequacy as an alternative forum, the Ninth Circuit held that, "[a]lthough New Zealand law does not permit [them] to maintain this exact suit, New Zealand, through its no-fault accident compensation scheme, has provided and continues to provide a remedy for [their] losses."  Id.  at 1144.  Absent any showing that the available administrative remedy was unacceptably inadequate, the Ninth Circuit concluded that the alternative forum need not "offer a judicial remedy" because "[t]he forum non conveniens analysis does not look to the precise source of the plaintiff's remedy."  Id. at 1145 (citing Jeha v. Arabian Am. Oil Co., 751 F. Supp. 122, 125 (S.D. Tex. 1990) (holding "quasi-judicial special commission" composed of legal and medical professionals and charged with handling medical malpractice claims

was an adequate alternative forum), aff'd, 936 F.2d 669 (5th Cir. 1991) (unpublished table decision)).

Similarly, in our case, the district court had a sound reason to determine that "[al]though it does not provide a judicial remedy, the ADR Center mediation is similar to the administrative compensation schemes upheld in cases like Lueck." Imamura, 371 F. Supp. 3d at 9. Here, as in Lueck, regardless of whether Plaintiffs can maintain their exact suit against GE in Japan, it is undisputed that they can both file their claims directly with TEPCO or mediate them through the ADR Center, where, as the district court noted, "[t]here is no filing fee, and Plaintiffs can be represented by an attorney." Id. By all accounts, many of the members of the putative class have already done so. In any event, Plaintiffs do not challenge the district court's findings as to the adequacy of the administrative compensation scheme in Japan, and we do not disturb them.

Instead, harkening back to previous arguments, Plaintiffs contend that Lueck, Veljkovic, and Tang are inapplicable because the courts in those cases only considered existence of available administrative remedies after determining that the named defendant was meaningfully amenable to service of process in the alternative forum. However, as we have explained, we agree with the district court that Japan satisfies the

jurisdictional requirement for forum availability in this case, and we need not reiterate our reasoning here. Therefore, it was not improper for the district court to consider the availability of the administrative compensation scheme in Japan at step one of the analysis.

In closing, we note that the incorporation of "the administration compensation scheme cases" does appear to be consistent with Piper's core teaching that a remedy provided by the alternative forum will be deemed adequate so long as it is not "so clearly inadequate or unsatisfactory that it is no remedy at all." Piper, 454 U.S. at 254. Plaintiffs fault the district court for not following the contrary view as expressed in Plymouth Whalers, where the United States District Court for the Eastern District of Michigan denied a defendant's motion to dismiss for forum non conveniens in an antitrust suit on the basis that the alleged availability of an administrative remedy for the plaintiff in Canada was insufficient to render it an adequate alternative forum. 166 F. Supp. 2d at 1164. The Plymouth Whalers court rooted its analysis in a literal interpretation of Piper's statement that forum non conveniens dismissal is inappropriate if the alternative forum "does not permit litigation of the subject matter of the dispute." Plymouth Whalers, 166 F. Supp. 2d at 1164 (quoting Piper, 454 U.S. at 255 n.22).

However, as we have explained, Japan does permit the litigation of the subject matter of Plaintiffs' dispute, and as such, the administrative compensation scheme available to Plaintiffs here exists in addition to, not to the exclusion of, their ability to pursue a lawsuit against TEPCO.  Moreover, Plaintiffs fail to recognize that the court in Plymouth Whalers distinguished that case from Lueck on the basis that the Plymouth Whalers plaintiff was notably unable "to pursue its own claim" through the alleged administrative process, and that it was "improbab[le] that any administrative complaint would result in a prosecution."  Id. at 1164 n.7.  There are no such bars on Plaintiffs' ability to mediate their claims through the ADR Center or pursue them directly with TEPCO.

Therefore, we hold that Japan satisfies the forum availability requirement despite the jurisdictional idiosyncrasies presented by this case.  Accordingly, the district court did not abuse its discretion in determining that an adequate alternative forum is available to Plaintiffs in Japan.  Because Appellants have waived any claim as to the balancing of the private and public interest factors, our inquiry ends here.

### III.  Conclusion

For the foregoing reasons, we affirm the dismissal of the amended complaint.

**Affirmed**.

-32-